M

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER T. ARENSON, PIERPORT CONSTRUCTION, INC., HALF DAY ROAD INVESTMENTS, LLC, HALF DAY ROAD DEVELOPMENT, LLC, TOLEDO 442 BUILDING CORP., ARENSON MANAGEMENT, INC., RESIDENCES ON SCHUBERT, LLC, 1546 N. MOHAWK, LLC, CHICAGO ENERGY INVESTMENTS, INC., AUSTIN 1900 BUILDING CORP., AUSTIN FLEET SERVICES, INC., CHICAGO CO-GEN ENERGY, LLC, 3416 N. GREENVIEW, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs-Counter-Defendants, v. | ) ) ) | No. 12 C 1227 Judge Robert W. Gettleman |
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO, | ) ) ) ) ) | |
| Defendant-Counter-Plaintiff | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs/Counter-defendants Peter T. Arenson; Pierport Construction, Inc.; Half Day Road Investments, LLC; Half Day Road Development, LLC; Toledo 442 Building Corp.; Arenson Management, Inc.; Residences on Schubert, LLC; 1546 N. Mohawk, LLC; Chicago Energy Investments, Inc.; Austin 1900 Building Corp.; Austin Fleet Services, Inc.; Chicago Co-Gen Energy, LLC; and 416 N. Greenview, LLC (together, the "Arenson Entities") have brought a single count "Petition to Vacate Arbitration Award," issued by a Joint Arbitration Board ("JAB") against them and in favor of defendant Administrative District Council 1 of Illinois of the International Union of Bricklayers (the "Union"). The Union has brought a three count counterclaim seeking to enforce the award (Count I) or, in the alternative, to compel the Arenson

Entities to comply with the Collective Bargaining Agreement and participate in a new arbitration proceeding before the JAB (Count II). Count III is an action to pierce the corporate veil of Pierport Development and Realty, Inc. ("Pierport"). The Arenson Entities have moved to dismiss the counterclaim. For the reasons described below, that motion is granted in part and denied in part.

## BACKGROUND

According to the counterclaim, Peter T. Arenson is an individual living in the Northern District of Illinois who qualifies as an employer within the meaning of 29 U.S.C. § 152(2). The other Arenson Entities are all either Illinois limited liability companies or corporations that also qualify as employers. In October 2009, the Union and Pierport entered into a CBA signed by Peter T. Arenson on behalf of Pierport as president. (The "CBA").

In or around June 2010 the JAB entered an award in favor of the Union and against Pierport after the Union had filed a grievance. The award ordered Pierport to pay the Union $178,181.35 as well as granting the Union other relief.

Despite being served with the award, Pierport failed to comply. The Union filed suit in federal court to enforce the award and Pierport counterclaimed to vacate it. On September 27, 2011, Judge Kocoras, to whom that case had been assigned, entered judgment in favor of the Union and against Pierport in the amount of $238,534.84 along with interest and other relief. Pierport again failed to comply and the Union began post-judgment collection proceedings. During the course of those proceedings the Union discovered evidence that in its view supports a determination that the other Arenson Entities (plaintiffs in the instant action) are responsible for the award and bound by the CBA. In a December 2, 2011, letter, the Union informed the

Arenson Entities of its position that Peter T. Arenson and the Arenson Entities are bound to the CBA signed by Pierport and are responsible for all obligations under that CBA, including the obligations established by the JAB and the subsequent judgment entered by Judge Kocoras. The letter indicated that a hearing would be held before the JAB on December 14, 2011, to consider the Union's grievance against the Arenson Entities.

In a December 9, 2011, letter, the Arenson Entities' counsel informed the Union that none of the Arenson Entities were signatories to the CBA and had not agreed to submit any disputes to the JAB. The letter indicated the Arenson Entities' position that whether an agreement to arbitrate exists is a question to be decided by a court, not the JAB.

The JAB hearing took place on December 14, 2011, as scheduled. The Union's representatives presented its case in support of its grievance against the Arenson Entities. No one appeared on behalf of the Arenson Entities. Following the hearing, the JAB issued a written arbitration award ("Arenson Award") sustaining the grievance and finding that the Arenson Entities were bound to Pierport's CBA since the date it was signed on October 5, 2009, that the Arenson Entities and Pierport are one and the same for purposes of the CBA, and that the Arenson Entities are jointly responsible along with Pierport for violations of the CBA, including the violations covered by the previous Pierport award and judgment. The Union served copies of the Arenson Award on each of the Arenson Entities, urging them to comply. Rather than comply, the Arenson Entities filed the instant action seeking to vacate the Arenson Award. Complicating matters slightly, Pierport filed for protection under Chapter 7 of the Bankruptcy laws on March 12, 2012.

## **DISCUSSION**

In Count I of the counterclaim, the Union seeks to enforce the Arenson Award. The Arenson Entities have moved to dismiss, arguing that the count fails to state a claim or, in the alternative, that the court lacks subject matter jurisdiction over the count.[1] Both arguments are based on the Arenson Entities' position that the JAB Arenson Award is void because it preceded any court determination that they were bound by a contract that required arbitration.

There is no dispute between the parties about the basic principle that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to submit. See AT&T Techs. Inc. v. Communication Workers of America, 475 U.S. 643, 648 (1986). Nor is there any dispute that the question of whether a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by a court on the basis of the contract entered into by the parties. Id. at 649. Finally, there is no dispute that none of the Arenson Entities are signatories to the CBA. Therefore, there is no dispute that before any JAB award against them can be enforced, a court must determine that they are bound to the arbitration provisions in the CBA by virtue of their relationship to Pierport.

Where the parties' positions diverge is with respect to the timing of the court decision. The Arenson Entities' position is that because they are not signatories and because they explicitly disputed the authority of the JAB over them and indicated that they would not

---

[1]The Arenson Entities also argue that all counts are barred by the bankruptcy court's final judgment order in Arenson, et al. v. Administrative District Council 1, 13 A 225. That order, however, held only that Count III of the instant counterclaim belongs to the Trustee in bankruptcy and enjoins the Union from asserting Count III in this court. Injunctive relief sought by the Arenson Entities was denied in all other respects as to Counts I and II. The bankruptcy court specifically held that the Trustee has no standing to pursue enforcement of the CBA and the JAB award as alleged in Counts I and II of the instant counterclaim to the extent those counts seek relief for injury not suffered by all creditors of the Estate. Consequently, the Union has agreed to dismiss Count III without prejudice.

4

participate in proceedings before the JAB, any decision by the JAB that preceded a court decision that they are bound by the CBA is void and cannot be enforced. Thus, they argue that even if this court concludes in the instant case that they are subject to the CBA, the Arenson Award is unenforceable and the Union must start the arbitration process over. And, according to the Arenson Entities, it is too late to do that.

In contrast, the Union argues that it does not matter when the court makes the determination, so long as it determines that the Arenson Entities were bound by the CBA at the time the Union asserted the grievance against them and presented its case to the JAB. If, according to the Union, the court rules that the Arenson Entities were so bound they necessarily would have been subject to the authority of the JAB at that time. Because the award would have been issued against them when they were subject to the JAB's authority, the award would be binding and enforceable.

Neither the parties nor the court has discovered a case involving identical circumstances. The Arenson Entities rely predominately on the Supreme Court's statement in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47 (1964), that "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the Collective Bargaining Agreement does in fact create such a duty." As the Union points out, however, Wiley & Sons involved a suit to compel arbitration and did not address the status of an award issued prior to a judicial determination of arbitrability.

The Union relies on AT&T Broadband, LLC v. IBEW, 317 F.3d 758, 762 (7th Cir. 2003), in which the court affirmed a district court's refusal to enjoin a labor arbitration, relying on the Norris-LaGuardia Act, 29 U.S.C. § 101-15 which, except in limited circumstances,

forbids federal courts from issuing injunctions in labor disputes. The court also rejected the employer's argument that it would be entitled to an injunction absent the applicability of the Act, concluding that the employer could not demonstrate irreparable injury. If the employer were to lose the arbitration, the Union would seek to enforce its victory and the employer could then defend on its theory that it had not agreed to arbitrate the particular dispute. That delay would not constitute irreparable injury. "All that AT&T could lose from the delay is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury." Id. at 762. Addressing the statement in Wiley & Sons (quoting AT&T Techs.) that a decision about arbitrability precedes the arbitration, the court stated that the cases do not "imply that this is the only proper sequence; it was just the right sequence for the kind of dispute that arose in those two cases. When arbitration can proceed with only one side's cooperation, by contrast, the timing issue comes to the fore, and with it the question whether pre-arbitration judicial review is essential to avoid irreparable injury. The answer is no . . .." Id. (Emphasis in original).

  The closest this court has come to the instant situation was in Illinois District Council No. 1 v. Nagel, 2005 WL 1651814 (N.D. Ill. 2005), in which the plaintiff union brought a complaint to enforce an arbitration award against defendant Nagel individually. An entity operating as Pre-Cast Autoclave Aerated Concrete of America Masonry Systems, Inc. ("Pre-Cast Systems") had signed a CBA with the union. Pre-Cast Systems was not incorporated at the time it entered the CBA, and the individuals operating it transacted business under that name and a variety of similar names. The union asserted that the various business entities failed to pay certain wages owed to employees, notified Nagel and another individual of a claim that their

6

relationship with Pre-Cast Systems made them personally liable for the obligation, and that a hearing was scheduled before the JAB. Nagel did not appear at the hearing and the JAB held Nagel personally responsible for the obligations. Nagel defended the union enforcement action by arguing, as do the Arenson Entities, that because he was not a signatory to the CBA the award was unenforceable as to him, and that the court lacked subject matter jurisdiction and/or the complaint failed to state a claim. Relying on International Union of Operating Engineers Local 150 v. Rabine, 161 F.3d 427 (7th Cir. 1998), this court concluded that because he had not moved to vacate the award, Nagel's argument was barred by the 90 day statute of limitations. Nagel, 2005 WL 1651814 at *2. Nothing in this court's opinion or in Rabine suggests that an arbitration award unattended by the respondent is invalid or unenforceable simply because a court had not yet predetermined the issue of arbitrability. Indeed, the results in Nagel, Rabine, and AT&T Broadband suggest just the opposite. All of those cases suggest, without holding, that had the respondents timely moved to vacate the award and lost before the district court, the arbitration awards would have been enforceable. In the instant action the Arenson Entities exercised their right to not attend the arbitration proceeding and then challenged the award by petitioning this court to vacate. If they lose that challenge, the award stands. Therefore, the Arenson Entities' motion to dismiss Count I of the counterclaim for failure to state a claim and/or lack of jurisdiction is denied.

Count II is brought in the alternative should the court dismiss Count I. Because the court has determined that Count I states a claim, and that if the Union establishee that the Arenson Entities were bound by the CBA at the time of the arbitration the award will be enforced, there is no need to determine if Count II states a claim. For purposes of completeness, however, the

7

court agrees with the Union's position that it has never issued a "demand for arbitration." Therefore, rather than being barred by the six month limitation period for suits to compel arbitration as argued by the Arenson Entities, the count is actually premature.[2]

Finally, based on the bankruptcy court's ruling in the adversary action, Count III is dismissed without prejudice.

## **CONCLUSION**

For the reasons described above, plaintiffs' motion to dismiss the counterclaim is denied as to Counts I and II, and granted without prejudice as to Count III. The Union is directed to file an amended Count II to its counterclaim on or before February 14, 2014. The status hearing set for February 6, 2014, is vacated and reset to February 20, 2014, at 9:00 a.m.

**ENTER:** January 24, 2014

      **Robert W. Gettleman**
      **United States District Judge**

---

[2] The Union recognizes this deficiency in Count II, and asks for leave to file an amendment. That request is granted.